

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-17-00155-CV

IN THE INTEREST OF L.P., I.B., P.S.S.-D., K.D., S.J., AND S.J., CHILDREN

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. 2015-518,584, Honorable Kara L. Darnell, Presiding

September 20, 2017

MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

Appellant, A.M.,[1] appeals the trial court's Order terminating her parental rights to five of her six children[2] who were the subjects of this suit.[3]  We will affirm.

---

[1] To protect the children's privacy, we will refer to appellant and the children by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b).

[2] References in this opinion to termination of A.M.'s parental rights to the "children" will refer to the five children to whom her rights were terminated.

[3] The trial court found that termination of A.M.'s parental rights to L.P. would not be in L.P.'s best interest, so the trial court did not terminate A.M.'s parental rights to L.P.  However, the trial court also found that appointment of A.M. as managing conservator of L.P. would not be in L.P.'s best interest. Finding that A.M. having access to or possession of L.P. would endanger the physical or emotional welfare of the child, the trial court appointed the Department sole managing conservator of L.P. and denied A.M. access to or possession of L.P.  A.M. does not appeal these rulings.

## Factual and Procedural Background

On December 8, 2015, Lubbock Police were dispatched to a domestic assault at the home of A.M. A.M. and her fifteen-year-old son, L.P., had gotten into an argument that escalated until A.M. used a heated clothing iron to hit L.P. in the head. A.M. indicated that L.P. hit her first and that she "blacked out" and cannot remember striking L.P. The children informed investigators that, in addition to hitting L.P. in the head, A.M. tried to burn L.P.'s stomach with the iron and hit L.P. with a chair. A.M. was arrested and charged with aggravated assault domestic violence. The Department of Family and Protective Services determined that there was "reason to believe" that A.M. had physically abused and been neglectful in her supervision of the children. The children were removed and the Department was named temporary managing conservator of the children.

The Department has investigated A.M. on multiple occasions over a span of about eleven years. One of these investigations arose out of concerns for A.M.'s mental health. However, A.M. refused to release information regarding her mental health diagnosis. A.M. stated that she was given medication in relation to her mental health but she chose not to take it. A.M. also has an extensive criminal history that includes convictions for assault, interference with the duties of a public servant, assault domestic violence, and theft.

During the investigation of this case, three of the children made outcries that A.M. had physically abused the children prior to the December 8 incident that led to this case. In addition, a former boyfriend of A.M. testified that she would physically abuse the children by spanking them for too long and that she would emotionally abuse the

children by saying "ugly things" to them and cursing at them regularly. He also testified that A.M. physically assaulted him on multiple occasions with some assaults occurring in front of the children. In addition, another boyfriend physically assaulted A.M. in front of the children. Nonetheless, A.M. and this boyfriend remain in a relationship.

Soon after the Department was named temporary managing conservator of the children, the trial court signed an "Order for Actions Necessary for Return of Child(ren)," which *inter alia* ordered A.M. to complete the Department's plan of service, refrain from using any illegal drugs, submit to drug and alcohol testing requested by the Department, and avoid criminal conduct. In a supplemental order, A.M. was required to *inter alia* complete a drug and alcohol treatment program, attend AA or NA meetings three times per week, complete specific parenting classes, and obtain a mental health screening. While A.M. claims that she completed the services she was required to complete, the record reflects that there were many services that she did not complete. Further, A.M. twice tested positive for illegal drugs with one of these positive tests occurring after she completed drug education classes.

In addition, while this case was pending, A.M. repeatedly disrupted the children's placements. A.M. would contact placements for the children and make spurious claims against people at the placement and/or threaten people at the placement. In many instances, this led to the placements refusing to continue to foster the children. However, even with these regular disruptions, the children are doing better under the Department's conservatorship. After initially trying to reunite the children with A.M., by the time of trial, the Department's plans were to terminate A.M.'s parental rights to the

3

children and have the children adopted. In fact, the foster home to three of the children at the time of trial might be interested in adopting all of the children together.

A.M. presents a single issue by her appeal. She contends that the evidence presented at trial was insufficient to support the termination of A.M.'s parental rights because she completed the actions required by the Department and termination is not in the children's best interest.

## Standard of Review

A parent's right to "the companionship, care, custody, and management" of her children is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). As such, the evidence must be clear and convincing to support an involuntary termination of parental rights. *Id.* We must strictly scrutinize termination proceedings. *Id.* at 20-21.

Under Texas law, to terminate parental rights, it must be proven by clear and convincing evidence that a parent has committed one or more of the acts and/or omissions identified in section 161.001(b)(1),[4] and that termination is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2016).[5] Clear and convincing evidence is the degree of proof necessary to produce in the mind of the trier

---

[4] We will refer to the acts and/or omissions identified by section 161.001(b)(1) as "statutory predicate grounds."

[5] Further reference to provisions of the Texas Family Code will be by reference to "section ___" or "§ ___."

of fact a firm belief or conviction as to the truth of the allegations sought to be established. § 101.007 (West 2014); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 31 (Tex. 1994). Only one statutory predicate ground is required to support termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re K.C.B.*, 280 S.W.3d 888, 894-95 (Tex. App.—Amarillo 2009, pet. denied).

In conducting a legal sufficiency challenge, we credit evidence that supports the verdict if a reasonable factfinder could have done so, and disregard contrary evidence unless a reasonable factfinder could not have done so. *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014). However, undisputed facts that do not support the verdict should not be disregarded in determining whether there is clear and convincing evidence. *Id*. at 113. Evidence that does more than raise surmise or suspicion is not sufficient unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id*. If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient and we must reverse. *Id*. (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

In a review of the factual sufficiency of the evidence, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). We are to determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id*. We also consider whether disputed evidence is such that a reasonable

5

factfinder could not have resolved the dispute in favor of its finding. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Analysis

By her sole issue, A.M. challenges the sufficiency of the evidence to support the termination of her parental rights to the children as to both establishment of the statutory predicate grounds and the best interest of the children.

Statutory Predicate Grounds

In her brief, A.M. challenges the sufficiency of the evidence supporting the trial court's finding that she failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of her children who had been in the temporary managing conservatorship of the Department for at least nine months after having been removed for abuse or neglect. *See* § 161.001(b)(1)(O). A.M., however, does not challenge the trial court's findings that she knowingly placed or allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being, and engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children. *See* § 161.001(b)(1)(D), (E). As previously mentioned, only one predicate finding under section 161.001(b)(1) is required to support termination. *In re A.V.*, 113 S.W.3d at 362; *In re K.C.B.*, 280 S.W.3d at 894-95. Because A.M. fails to challenge the sufficiency of the evidence supporting the findings under section 161.001(b)(1)(D) and (E), she has waived any complaint about

6

the sufficiency of the evidence supporting these findings. *In re A.V.*, 113 S.W.3d at 362-63; *Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 102-03 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Because only one statutory predicate ground is necessary under section 161.001(b), we need not address A.M.'s challenge to the sufficiency of the evidence supporting the trial court's finding under section 161.001(b)(1)(O). *In re A.V.*, 113 S.W.3d at 362; *Toliver*, 217 S.W.3d at 102-03.

Best Interest of the Children

A.M. also challenges the sufficiency of the evidence supporting the determination that termination of her parental rights to the children is in the children's best interest. The Department was required to prove by clear and convincing evidence that termination of A.M.'s parental rights was in the children's best interest. § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d at 116. In conducting a review of the sufficiency of the evidence to support a trial court's best interest determination, we must assess whether the evidence is such that a factfinder could have formed a firm belief or conviction that termination is in the children's best interest. *See In re K.M.L.*, 443 S.W.3d at 113 (legal sufficiency standard); *In re J.F.C.*, 96 S.W.3d at 266 (factual sufficiency standard).

We start our review with a strong presumption that preserving the parent-child relationship is in the best interest of the children. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). We also strive to achieve prompt and permanent placement of the children in a safe environment as this is also presumed to be in the children's best interest. *See* § 263.307(a) (West Supp. 2016). The Supreme Court has set out a non-exhaustive list of factors to consider when determining the best interest of a child. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include: (1) the desires of

the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

Evidence that supports one or more statutory predicate grounds for termination may be probative evidence that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28; *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013). In addition to direct evidence, the best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence. *In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See* § 263.307(a); *In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

We begin our analysis of the children's best interest with an acknowledgement that A.M. has not challenged the trial court's findings under section 161.001(b)(1)(D) and (E). This is significant since evidence proving one or more of the statutory predicate grounds for termination is probative that termination is in the best interest of the children. *In re C.H.*, 89 S.W.3d at 28.

The evidence presented in this case establishes the following facts:

1. The children involved in this case were removed after A.M. struck one of her children in the head with a hot clothing iron. At the time of trial, A.M. was facing charges for aggravated assault domestic violence as a result of this incident.

2. A.M. has been physically and emotionally abusive toward the children on multiple occasions.

3. A.M. has exposed the children to multiple domestic assaults. In some instances, A.M. was the assailant and in others she was the victim.

4. A.M. has an extensive criminal history, including convictions for assault, interference with a public servant, assault domestic violence, and theft.

5. A.M. has been diagnosed with mental health issues which require medication. However, she claims that she does not take the prescribed medication.

6. A.M. tested positive for using controlled substances during the pendency of this case, including a positive test for cocaine after completing drug education classes.

7. A.M. has had repeated confrontations with Department caseworkers and visitation monitors. She also disrupted the children's placements during the pendency of the case, which caused the children to be moved on several occasions.

We will consider these facts in addressing the *Holley* factors to determine whether termination of A.M.'s parental rights is in the children's best interest.

Some of the children expressed a desire to return to A.M., but some of them did not. While this factor weighs against termination as to those children that expressed a desire to return to A.M., we must consider the overall circumstances of the children.

> Although a child's love of his natural parents is a very important consideration in determining the best interests of the child, it cannot override or outweigh the overwhelming and undisputed evidence showing that the parents placed or allowed the child to remain in conditions, and engaged in conduct or placed the child with persons who engaged in conduct, which endangers the physical and emotional well-being of the child. The child's love of his parents cannot compensate for the lack of an

> opportunity to grow up in a normal and safe way equipped to live a normal, productive, and satisfying life.

*In re W.S.M.*, 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.).

The findings that A.M. knowingly placed or allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being, and engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children support the proposition that termination is in the children's best interest under the second and third *Holley* factors. *In re C.H.*, 89 S.W.3d at 28; *In re E.C.R.*, 402 S.W.3d at 249. We also consider A.M.'s continued drug use during the pendency of the case as further proof that A.M. endangered the children. *See In re F.A.R.*, No. 11-04-00014-CV, 2005 Tex. App. LEXIS 234, at *11-12 (Tex. App.—Eastland Jan. 13, 2005, no pet.) (mem. op.) (parent's continued drug use demonstrates an "inability to provide for [the children's] emotional and physical needs"). Because A.M. has exposed the children to emotional and physical abuse, their emotional needs will be greater than other children. Finally, intentional criminal activity which exposes the parent to incarceration, such as A.M.'s continued drug use and pending assault charge, is relevant evidence that tends to establish a course of conduct that endangers the emotional and physical well-being of the children. *In re A.W.T.*, 61 S.W.3d 87, 89 (Tex. App.—Amarillo 2001, no pet.) (per curiam). For these reasons, the second and third *Holley* factors strongly support termination.

While A.M. contends that the Department's caseworker testified that A.M. completed the services required for return of the children, the record reflects that she did not complete several court-ordered services. By way of example, A.M. did not

10

attend AA and NA meetings as required, complete specified parenting classes, attend individual counseling until completion, obtain a mental health evaluation, or complete a drug and alcohol assessment after her positive drug test in January 2017. Further, the evidence establishes that some of the services that A.M. completed were not effective in promoting the children's best interest. For example, A.M. tested positive for cocaine after she had completed drug education classes. Obviously, A.M.'s physical and emotional abuse of the children indicates that her parental abilities are unacceptable. Additionally, A.M.'s repeated disruptions of the children's placements are indicative that A.M. is unwilling to place the children's best interest ahead of her own desires. Consequently, the fourth and fifth *Holley* factors strongly support termination.

The Department's plan for the children is termination of A.M.'s parental rights to enable the children to be adopted. However, following termination of A.M.'s parental rights, the Department plans to have S.J.-1's father be appointed sole managing conservator of S.J.-1. Three of the children were placed in a foster home days before trial with the other two children to join them a couple weeks after the trial. This foster placement might be willing to be a permanent placement for all five children. The Department has a plan to ensure that S.J.-1 will be able to visit his siblings regularly. When the Department's plans for the children are compared to the lack of stability and nurture A.M. is capable of providing, the sixth and seventh *Holley* factors weigh heavily in favor of termination.

A.M. has committed numerous acts that indicate that her existing relationship with the children is not proper. A.M. assaulted L.P. with a heated clothing iron after physically and emotionally abusing the children in the past. She exposed the children to

domestic violence on multiple occasions. She has an extensive criminal history, including pending assault domestic violence charges. A.M. failed to complete her court-ordered services, and tested positive for drugs on two occasions during the pendency of the case. She also disrupted the children's placements causing the children to have to be moved. Based on all of this, the eighth *Holley* factor strongly favors termination.

Finally, other than denying that many of these events occurred, A.M. does not offer any excuses for her actions or omissions.

When we consider all of the *Holley* factors in light of the entire record, we conclude that a reasonable factfinder would have formed a firm belief or conviction that termination of A.M.'s parental rights to the children is in the children's best interest. *See In re K.M.L.*, 443 S.W.3d at 113; *In re J.F.C.*, 96 S.W.3d at 266.

## Conclusion

Having determined that the evidence is both legally and factually sufficient to support the trial court's decision to terminate A.M.'s parental rights to the children, we affirm the judgment of the trial court.

Judy C. Parker
Justice

12